UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

GARRETT D. RUSSITANO,

                Plaintiff,

        -against-                                           6:12-CV-1641 (LEK/TWD)

JAMES F. BROWN; MARK
DOMENICO; JAMES MASUCCHI;
JOHN MAZZAFERRO; JOSEPH FUSCO
JR.; THE CITY OF ROME, NY; ONEIDA
COUNTY, NY; THE STATE OF NEW
YORK; JOHN DOE; and JANE DOE,

                Defendants.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

*Pro se* Plaintiff Garrett D. Russitano ("Plaintiff") commenced this civil rights action on November 2, 2012. Dkt. No. 1 ("Complaint"). Defendant the State of New York ("New York") has moved to dismiss. Dkt. No. 6; 6-1 ("New York Memorandum"). Defendants James F. Brown, Mark Domenico, James Masucchi, John Mazzaferro, Joseph Fusco, Jr., and the City of Rome (collectively, "Rome Defendants") have also moved to dismiss. Dkt. No. 23; 23-2 ("Rome Memorandum"). For the following reasons, both Motions are granted.

**II.    BACKGROUND**[1]

The Complaint enumerates roughly 48 incidents of alleged constitutional violations and states that there are "at least 65 other incidents of 'selective prosecution' and discrimination by the defendants from 2002 until the present time." Compl. ¶ 51; see id. ¶¶ 3-50. In keeping with its duty

---

[1] The Court takes the factual allegations in Plaintiff's Complaint as true for the purpose of ruling on the Motions to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

to construe *pro se* pleadings liberally, see, e.g., Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008), and in an effort to organize Plaintiff's claims for analysis, the Court has endeavored to catalogue the enumerated incidents chronologically as follows.

**A. Incidents Before November 2, 2009**

Plaintiff claims that Defendants the City of Rome, Brown, Domenico, Masucchi, John Doe, and Jane Doe have "harassed" him since 2002, singled him out for selective prosecution, given him the "evil eye," used racial slurs such as "ignorant [w]etback" against him, and otherwise discriminated against him and conspired to "run [him] out of town." Compl. ¶¶ 1, 3, 23. In September 2002, an unnamed party stated that a petition complained about Plaintiff's business at 1333 East Dominick Street in Rome but refused to provide Plaintiff a copy of the petition so Plaintiff could verify the signatures and "face [his] accusers." Id. ¶ 46. On October 28, 2002, Defendant Domenico, as Rome's Codes Director, and Codes Inspector Robert Ryan charged Plaintiff with codes violations that Plaintiff contends did not exist at 1333 East Dominick Street. Id. ¶ 45. On December 18, 2002, Codes Inspector Paul Ziminski charged Plaintiff with 54 counts of "running a junk yard" for repairing used cars inside one of Plaintiff's buildings. Id. ¶ 44. Two "scrap and salvage operations" across the street from Plaintiff's repair shop received no citations. Id.

On or about October 5, 2003, "Judge Gannon"[2] issued a ruling in a codes case that limited the number and size of logs that Plaintiff could have within a manufacturing zone. Id. ¶ 49. Other entities were allowed to have any number and size of logs. Id. On December 2, 2003, the City of

---

[2] The Court presumes that Plaintiff refers to the Honorable John C. Gannon, a Judge of the Rome City Court.

Rome served Plaintiff with a "Final Notice Before Redemption" in an undescribed matter and thereafter refused to permit Plaintiff to pay the taxes owed. Id. ¶ 43. In April 2005, Defendant Brown, as Mayor of Rome, directed Ann Lynch to eject Plaintiff from 109 Canal Street in Rome or he would shut the building down for codes violations. Id. ¶ 50. On November 22, 2005, the Rome City Court heard docket number 38523, consisting of three counts of animal violations against Plaintiff. Id. ¶ 40. Plaintiff was found guilty of having an unlicensed dog despite "indisputable proof" that the dog was not his. Id. At this trial, an unnamed City Court Judge "interfered" with Plaintiff's defense, encouraged the Rome City Dog Warden to lie to support the City's case, and tried to have the court reporter alter the record. Id. ¶ 41. Sometime in 2005, Defendant Domenico held a hearing and ordered Plaintiff to tear down his building at 717 West Dominick Street in Rome even though it held seven feet of snow on the roof and roofless buildings remained standing as of the filing of the Complaint.[3] Id. ¶ 24.

On January 24, 2006, Codes Inspector Kevin Wheaton[4] issued Plaintiff a Rome City Court appearance ticket for "rubbish" that was not on Plaintiff's property. Id. ¶ 39. On April 24, 2006, Plaintiff filed a motion to dismiss in one of his codes cases in Rome City Court on the basis of selective prosecution and political retribution, which the court ignored. Id. ¶ 22. On August 30, 2006, Codes Inspector Bill Mentor attempted to inspect Plaintiff's place of business. Id. ¶ 31. Inspector Mentor was turned away because he did not have an appointment, and at 2:00 P.M. that day, Defendant Domenico and Rome City Attorney Tim Benedict arrived at Plaintiff's place of

---

[3] Based on Plaintiff's reference to "7 years later" and the Complaint's filing date of November 2, 2012, the Court deduces that the events of paragraph 24 occurred in 2005. See Compl. ¶ 24.

[4] Also spelled "Wheadon" in the Complaint. See Compl. ¶ 10.

3

business to threaten Plaintiff and his business. Id. On October 19, 2006, Defendant Domenico ordered Plaintiff by letter not to work at 109 Canal Street and to use it only for cold storage. Id. ¶ 20. The building had two other occupants, Rofin LLC and Elagrace Caskets, both of whom were permitted to continue working there. Id.; see id. ¶ 6. On November 21, 2006, Defendant Domenico "tried to run [Plaintiff] out of business" by informing him via letter that he could not sell used cars at 715 Erie Boulevard West in Rome without permission from the zoning appeals board. Id. ¶ 38.

On February 1, 2007, Rome Patrolman Jason Paul "harassed" Plaintiff at 109 Canal Street and "interfered" with an undescribed civil matter. Id. ¶ 21. On October 27, 2007, City Court Judge Daniel Wilson,[5] in another undescribed matter, granted the city attorney's request for an adjournment. Id. ¶ 42.

On January 29, 2009, Plaintiff filed a Notice of Claim, which the City of Rome ignored, for interference by Patrolman Jay Demagio and a New York State Trooper with Plaintiff's ability to access the polling places at the Stanwix Heights Fire Department and the South Rome Senior Citizens Center. Id. ¶ 16. On June 11, 2009, Plaintiff filed a Notice of Claim with the State of New York, which was rejected by New York Assistant Attorney General G. Dillon Lawrence. Id. ¶ 27. In July 2009, the City of Rome removed Plaintiff's equipment and stock from a fenced-in lot at 701 Lawrence Street in Rome. Id. ¶ 7. On July 22, 2009, Plaintiff filed a Notice of Claim for the removed equipment and stock. Id. ¶ 18. Rome Corporation Counsel Diane Martin Grande rejected the July 22 Notice of Claim as well as two follow-up claims and a Freedom of Information Law ("FOIL") request. Id. On August 11, 2009, Codes Inspector Wheaton charged Plaintiff with five

---

[5] The Court presumes that Plaintiff refers to the Honorable Daniel C. Wilson, a Judge of the Rome City Court.

codes violations, including "having no water and a sign on a trailer." Id. ¶ 10. Plaintiff contends that no investigation was undertaken to determine whether he had running water. Id.

On October 6, 2009, Corporation Counsel Grande ordered Fire Inspector Kieth Gorczka[6] to inspect an undisclosed location and to "pay particular attention to [Plaintiff's] side of the building." Id. ¶ 17. Plaintiff filed another Notice of Claim on October 7, 2009, which was ignored. Id. Fire Inspector Gorczka scheduled an inspection on October 10 but failed to appear. Id. A second appointment was scheduled that month, but again fire inspectors did not appear. Id. ¶ 3. On October 30, 2009, Corporation Counsel Grande and Defendants Brown, Domenico, Masucchi, John Doe, and Jane Doe ordered Fire Inspector Gorczka to obtain an administrative search warrant by stating that he had been unable to access 109 Canal Street. Id. ¶¶ 3, 19.[7] Plaintiff was then two blocks from the Rome City Courthouse, where fifty police officers were waiting to serve him with a notice. Id. ¶ 19.

**B. Incidents On or After November 2, 2009**

Defendant Masucchi executed the administrative search warrant on November 3, 2009, an election day, causing Plaintiff to leave the polls.[8] Id. ¶ 19. That same day, Rome City Fire Chief

---

[6] Spelled "Goczka" in paragraph 17 but "Gorczka" elsewhere in the Complaint. Compare Compl. ¶ 17, with id. ¶¶ 3, 37.

[7] Paragraph 19 states that the administrative search warrant was obtained on October 30, 2010, while paragraph 3 states that it was obtained on October 30, 2009. Compare Compl. ¶ 19, with id. ¶ 3. Because the date of October 30, 2009, is fully consistent with the Complaint's other allegations and the date of October 30, 2010, is not at all consistent with the other allegations, the Court believes the date of October 30, 2010, is a clerical error and disregards it in favor of October 30, 2009. See generally id.

[8] Plaintiff's specific mention of November 3 as election day is one example of another allegation supporting the Court's conclusion *supra* in note 7 that the date of October 30, 2010, given in paragraph 19 of the Complaint is an error and was intended to be October 30, 2009; election day was November 3 in 2009 but November 2 in 2010. See Compl. ¶ 19; see also id. ¶ 32.

5

Bremant removed firemen John DiBardino and Joseph Fusco, III, from the inspection truck to prevent them from protecting Plaintiff. Id. ¶ 32. On November 23, 2009, the Rome Fire Department "posted" Plaintiff's building at 109 Canal Street and denied him entry, but Defendant Brown permitted the other two occupants to continue work without interruption. Id. ¶ 6. On November 27, 2009, Plaintiff moved to intervene in a case in Rome City Court. Id. ¶ 28. The court denied the motion, which Plaintiff contends permitted Defendant Domenico to selectively prosecute him. Id.

On December 3, 2009, Plaintiff attempted to file a complaint for an unstated reason, which Oneida County District Attorney Scott[9] McNamara[10] refused. Id. ¶ 26. On December 4, 2009, Plaintiff agreed to help and support Defendant Fusco's campaign for Mayor of Rome, which Plaintiff contends formed a contract that Defendant Fusco later breached. Id. ¶ 47. On December 12, 2009, the Clerk of the New York State Supreme Court at the Oneida County Courthouse refused to review or accept Plaintiff's complaint, request for judicial intervention, and order to show cause. Id. ¶ 14. On December 13, 2009, Plaintiff complained to District Attorney McNamara that Defendant Brown was leading a conspiracy and had to be prosecuted.[11] Id. ¶ 34. District Attorney McNamara replied, "Brown bullies everyone," and "You're not the only one Brown[']s[] doing this to." Id. ¶¶ 3, 34. On December 37, 2009, Rome Police Detective Rotolo refused Plaintiff's

---

[9] Spelled "Scot" in paragraph 26 but "Scott" elsewhere in the Complaint. Compare Compl. ¶ 26, with id. ¶¶ 3, 5, 24, 33.

[10] Spelled both "McNamera" and "McNamara" in paragraph 3 and "McNamara" elsewhere in the Complaint. Compare Compl. ¶ 3, with id. ¶¶ 5, 24, 26, 33.

[11] It may be that paragraph 26 of the Complaint refers to the same event but erroneously represents the date as December 3, 2009, instead of December 13, 2009; however, the Court will not assume this. Compare Compl. ¶ 26, with id. ¶ 34.

complaint that Defendants Brown and Masucchi, Corporation Counsel Grande, and Fire Inspector Gorczka had filed false information to obtain the administrative search warrant. Id. ¶ 37.

On January 12, 2010, Plaintiff filed FOIL requests and a Notice of Claim, which Defendants ignored. Id. ¶ 35. On January 19, 2010, Plaintiff filed a FOIL request to gather information relating to the City of Rome's removal of equipment and stock in July 2009, which was denied. Id. ¶ 8. Plaintiff filed a Notice of Claim on February 10, 2010, which Defendants Masucchi and Fusco and District Attorney McNamara ignored. Id. ¶ 5. On February 16, 2010, the city attorney failed to appear in court in an undescribed matter and moved for an adjournment. Id. ¶ 11. On February 29, 2010, Oneida County Treasurer Anthony Carvelli and Daniel Yerden prevented Plaintiff from attending a county land auction. Id. ¶ 36. On March 5, 2010, Plaintiff filed a FOIL request, which the City of Rome denied. Id. ¶ 9.

On March 12, 2010, Plaintiff received an online threat and took down his website as a result.[12] Id. ¶ 33. Defendants Masucchi and Fusco and District Attorney McNamara identified the responsible party but declined to take action against him, opting instead to "forgive him for stealing [Plaintiff's] rights." Id. ¶¶ 5, 33. Defendants Masucchi and Fusco and District Attorney McNamara refused to give Plaintiff information or the identity of the responsible party, denied Plaintiff's FOIL request, arrested Plaintiff, and charged him with threatening someone. Id. ¶¶ 5.

On June 22, 2010, Defendant Masucchi, District Attorney McNamara, and the Rome Police Department declined to act on Plaintiff's complaint on an undescribed matter and recalled the

---

[12] The Court presumes this is the same "web site exposing the City Hall" referenced in paragraph 5 of the Complaint, which may be the same as the "TOPIX" website mentioned therein. See Compl. ¶ 5. Paragraph 5 contains allegations similar to those in paragraph 33 but provides no date. Compare id., with id. ¶ 33. In the interest of construing the Complaint liberally, the Court therefore assumes that both paragraphs refer to the same event.

7

dispatched officers to the station. Id. ¶ 25. On July 26, 2010, Rome Police Detective DelAsandro, at the direction of Defendant Masucchi, accused Plaintiff of removing Defendant Brown's campaign signs and threatened to arrest Plaintiff. Id. ¶ 29. Plaintiff had removed no signs. Id. On May 29, 2011, Rome Police attempted to evict Plaintiff from 109 Canal Street and refused to provide a copy of the police report, thus preventing Plaintiff from filing a lawsuit on a theory of improper eviction. Id. ¶ 30. In September 2012, Patrolman Sanders declined to arrest a man he caught cutting Plaintiff's gate lock at an undisclosed location and threatened to arrest Plaintiff if Plaintiff cut his[13] lock to access Plaintiff's property. Id. ¶ 4.

### C. Incidents on Undetermined Dates

The Court cannot determine the date of any of the "at least 65" unenumerated additional incidents Plaintiff alleges occurred between 2002 and the filing of the Complaint. See id. ¶ 51. Additionally, Plaintiff does not state the date on which any of the following enumerated incidents occurred. Accordingly, they are recited in the order they appear in the Complaint.

Defendants Brown and Masucchi had Plaintiff arrested for an e-mail Plaintiff sent from his home in the nearby Town of Floyd, New York, and had him prosecuted in Rome City Court. Id. ¶ 12. Defendants Brown, Domenico, and Masucchi "harass[ed]" Plaintiff up to thrice daily and routed "codes and police cars" past Plaintiff's property at least ten times daily on a street that normally bears fewer than 100 cars per day. Id. ¶ 13. On Friday, November 4 of an unknown year,[14] Rome Police arrested Plaintiff for a codes violation at 5:00 P.M. with intent to make him

---

[13] The Court cannot determine whether "his" refers to Patrolman Sanders or the man who was cutting Plaintiff's lock. See Compl. ¶ 4.

[14] The Complaint's allegations range from 2002 to 2012. See generally Compl. Within that period, November 4 fell on a Friday in both 2005 and 2011. The Court cannot determine in which year Plaintiff alleges the arrest described in paragraph 15 occurred. See id. ¶ 15.

8

spend the weekend in jail without bail. Id. ¶ 15. One officer said that they had "been planning this all week." Id. Defendant Domenico introduced himself as a "PE,"[15] but the New York Secretary of State had not heard of him. Id. ¶ 23. Finally, Defendants assessed 1333 East Dominick Street at nearly $1,000,000.00, conducted an environmental survey, determined that the cost of cleanup exceeded the value of the property, and refused to discount fees, penalties, and interest for Plaintiff but forgave them, and taxes, to others. Id. ¶ 48.

### D. Requested Relief and Opposition

On the basis of these incidents, Plaintiff brings claims under 42 U.S.C. § 1983 for violation of the constitutional guarantees of free speech, speedy trial, and equal protection.[16] See generally Compl. Plaintiff bases his equal protection claims on the theories of selective prosecution[17] and discrimination on the basis of national origin. See generally id. Construed liberally, the Complaint also alleges claims under New York law for FOIL violations, breach of contract, and violation of the speedy-trial guarantee. See id. ¶¶ 5, 9, 11, 18, 35, 42, 47; N.Y. PUB. OFF. LAW § 84 et seq.; N.Y. CRIM. PROC. LAW § 30.30. Plaintiff requests relief in the form of: (1) a $15,500,000 judgment against all Defendants; (2) the return of two real estate properties from the City of Rome; and (3) individual judgments in the amount of $5,000,000 each against Defendants Brown, Domenico,

---

[15] The Complaint offers no indication of what a "PE" is. See generally Compl.

[16] Although some of Plaintiff's allegations involve his "right to public places at the pol[l]ing places," they appear to be linked to his "right to campaign freely" and not to his right to vote. See Compl. ¶¶ 16, 19. Accordingly, the Court construes these allegations as supporting Plaintiff's free-speech claims rather than as a substantive due process claim based on denial of the right to vote.

[17] Plaintiff defines "selective prosecution" as "the partisan use of government resources to punish political enemies." Compl. ¶ 19.

Masucchi, Mazzaferro, and Fusco.[18] Compl. at 11-12. New York and the Rome Defendants have moved to dismiss Plaintiff's claims against them for lack of subject-matter jurisdiction, failure to state a claim, and inadequate pleading.[19] N.Y. Mem.; Rome Mem.; see FED. R. CIV. P. 8, 12(b)(1), 12(b)(6).

### III. § 1983 CLAIMS

#### A. Sovereign Immunity

The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI; see also Riley v. Town of Bethlehem, 44 F. Supp. 2d 451, 457 (N.D.N.Y. 1999) ("The 'state' for purposes of the Eleventh Amendment generally includes state agencies and state officials sued in their official capacities, but not political subdivisions." (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978))). "[C]onsistent with the Eleventh Amendment, the doctrine of sovereign immunity additionally protects [an] unconsenting state[] from suits brought by its own citizens in its own state courts." In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 371 (2d Cir. 2005) (citing Alden v. Maine, 527 U.S. 706, 713 (1999);

---

[18] Plaintiff also requests that a criminal charge of conspiracy be filed against Defendants Brown, Domenico, Masucchi, Mazzaferro, and Fusco. Compl. at 11-12. "Whether to prosecute and what charge to file" is an executive function that "generally rest[s] in the prosecutor's discretion." United States v. Batchelder, 442 U.S. 114, 124 (1979); cf. Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 801 (1987) (noting that even in a contempt case, where a court has authority to initiate prosecution, "its exercise of that authority must be restrained" to "[t]he least possible power adequate to the end proposed"). Plaintiff's request for criminal charges is beyond the power of the Court to grant and is denied.

[19] Defendant Oneida County filed an Answer with a cross-claim against all co-defendants for indemnity or contribution. Dkt. No. 17.

Hans v. Louisiana, 134 U.S. 1, 18-19 (1890)).[20]

Although Congress may abrogate sovereign immunity pursuant to certain enumerated authorities—for example, § 5 of the Fourteenth Amendment, see, e.g., Bd. of Trustees v. Garrett, 531 U.S. 356, 363-64 (2001)—it did not do so when enacting § 1983. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64-71 (1989); Goonewardena v. New York, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("[S]ection 1983 does not abrogate a state's Eleventh Amendment immunity." (citing Quern v. Jordan, 440 U.S. 332 (1979)). Nor has New York consented to suit. See N.Y. Mem. at 3 n.2; see also Goonewardena, 475 F. Supp. 2d at 329 ("While the acceptance of federal funds by a state entity waives that state's immunity for purposes of Title VI, it does not for purposes of section 1983."). Accordingly, Plaintiff's § 1983 claims against the State of New York are barred by sovereign immunity and therefore dismissed.[21] See Komlosi v. N.Y. State Office of Mental Retardation & Dev'l Disabilities, 64 F.3d 810, 815 (2d Cir. 1995).

**B. Statute of Limitations**

Claims under § 1983 for alleged violations of federal rights within New York must be brought within three years of the action giving rise to the claim. See, e.g., Owens v. Okure, 488 U.S. 235, 250-51 (1989) ("[C]ourts considering § 1983 claims should borrow the general or residual statute for personal injury actions. The Court of Appeals therefore correctly applied New York's 3-

---

[20] "For over a century, the Supreme Court has interpreted the Eleventh Amendment not as against a *tabula rasa*, but rather as a confirmation of the preexisting principle of sovereign immunity. . . . Thus, the Supreme Court has held that sovereign immunity, as an *a priori* concept, extends beyond the explicit language of the Eleventh Amendment." Dairy Mart, 411 F.3d at 371 (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Edelman v. Jordan, 415 U.S. 661, 662-63 (1974)).

[21] To the extent Plaintiff intends to bring claims against any New York agency, such as the Rome City Court, those claims are likewise barred.

11

year statute of limitations governing personal injury actions to respondent Okure's claim."); accord Kevilly v. New York, 410 F. App'x 371, 375 (2d Cir. 2010). A claim may include allegations outside the limitations period if they form part of a continuing violation extending into the limitations period. See, e.g., Ruane v. County of Suffolk, 923 F. Supp. 2d 454, 459-60 (E.D.N.Y. 2013). However, the continuing-violation doctrine is disfavored in this Circuit and applied only under compelling circumstances. See id. at 459. Compelling circumstances include "where the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is an express, openly espoused policy [that is] alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness." Yip v. Bd. of Trustees, No. 03-CV-0959, 2004 WL 2202594, at *4 (W.D.N.Y. Sept. 29, 2004) (footnote omitted). Moreover, "[c]haracterizing defendants' separate wrongful acts as having been committed in furtherance of a conspiracy or as a 'series of interlocking events' does not postpone accrual of claims based on individual wrongful acts." Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir. 1980); see also Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999) ("[A] continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act."); Kellogg v. N.Y. State Dep't of Corr. Servs., No. 07-CV-2804, 2009 WL 2058560, at *1 (S.D.N.Y. July 15, 2009) ("[T]he continuing-violation doctrine does not apply to discrete acts, but only to ongoing circumstances that combine to form a single violation that cannot be said to occur on any particular day." (citing National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-15 (2002)).

Here, Plaintiff alleges no express, openly espoused policy, covert action, or difficulty in pinpointing the date of defendants' actions. To the contrary, Plaintiff's allegations concern a litany

12

of discrete events, for the vast majority of which Plaintiff has stated a specific date of occurrence. Accordingly, the continuing-violation doctrine does not apply here, and Plaintiff's § 1983 claims against the Rome Defendants, insofar as they are based on incidents occurring prior to November 2, 2009—three years before the Complaint was filed—are barred by the statute of limitations and therefore dismissed.

### C. Failure to State a Claim

#### 1. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see FED. R. CIV. P. 12(b)(6). "[A] court must accept all well-pleaded factual allegations made by the non-moving party as true and 'draw all inferences in . . . the non-moving party's favor,'" Brown v. Kopek, No. 11-CV-0016, 2011 WL 3737921, at *3 (N.D.N.Y. Aug. 24, 2011) (Kahn, J.) (quoting In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.)), but "[a]ny legal conclusions, deductions, or opinions couched as factual allegations are not accorded a presumption of truthfulness." Id. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555); see also id. at 678-79 (holding that where a court cannot infer from the pleaded facts more than the mere possibility of the alleged misconduct, a plaintiff has not demonstrated that she is entitled to relief, and her complaint is subject to dismissal). "To state a

13

claim under Section 1983, a plaintiff must show: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation, [and] (4) damages." Rahman v. Fisher, 607 F. Supp. 2d 580, 584 (S.D.N.Y. 2009) (quoting Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (internal quotation marks omitted)).

### 2. Municipal Liability

To establish a municipality's liability under § 1983, a plaintiff must show that she "suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." Askins v. Doe No. 1, No. 12-877-CV, 2013 WL 4488698, at *3 (2d Cir. Aug. 23, 2013) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)). As stated previously, Plaintiff has not alleged that the Rome Defendants were acting pursuant to official policy or custom. Accordingly, Plaintiff's claims under § 1983 are dismissed as to the City of Rome.

### 2. Defendant Mazzaferro

Plaintiff has made no allegations against Defendant Mazzaferro. See generally Compl. Defendant Mazzaferro is therefore dismissed from this action.[22]

### 3. Undated Incidents

Similarly, Plaintiff's § 1983 claims are dismissed as against the Rome Defendants insofar as they are based on the incidents enumerated in the Complaint without date, because the Court cannot

---

[22] The Rome Defendants also argue that because the Complaint refers to Defendant Fusco as "Mayor" Fusco, it must be construed as bringing claims against Defendant Fusco only in his official capacity as Mayor. See Rome Mem. at 7. Further, the Rome Defendants argue that because Defendant Fusco did not take office as Mayor of Rome until January 1, 2012, the claims against Defendant Fusco must be dismissed because they rest on incidents that took place prior to that date. Id. The Court rejects this reasoning. It is natural for Plaintiff to refer to the current Mayor of Rome as "Mayor" even when referring to actions predating the Mayor's investiture.

14

determine, among other things, whether they fall within the three-year limitations period.[23]

### 4. Remaining Incidents

In light of the foregoing, only the following enumerated incidents in the Complaint support Plaintiff's § 1983 claims: (1) Defendant Masucchi's execution of an administrative search warrant on November 3, 2009; (2) Defendant Brown's grant of permission to the other two occupants of 109 Canal Street to continue working while Plaintiff was denied entry; (3) Defendants' failure to respond to Plaintiff' s FOIL requests and Notices of Claim, and Defendant Masucchi's failure to act on Plaintiff's complaint on an undescribed matter; (4) Defendants Masucchi and Fusco's failure to arrest the individual who threatened Plaintiff online or provide Plaintiff with information about the individual, and their arrest of Plaintiff instead; and (5) Defendant Masucchi's order to Rome Police Detective DelAsandro to accuse Plaintiff of removing Defendant Brown's signs and threaten arrest. None of these incidents implicate the Sixth Amendment right to a speedy trial, and Plaintiff has not alleged that he is a member of a protected class.[24] Plaintiff's speedy-trial and national origin discrimination theories are therefore unsupported, and the Court considers only his free speech and selective prosecution claims. See United States v. M. Genzale Plating, Inc., 723 F. Supp. 877, 885 (E.D.N.Y. 1989) ("Vague assertions of unfairness on the part of the government, without more,

---

[23] The "at least 65 other incidents of 'selective prosecution' and discrimination" mentioned in the Complaint likewise cannot support a cause of action because, among other things, they fail to allege a date within the three-year limitations period, and they fail to provide Defendants notice of the factual basis for a claim, thus depriving Defendants of an opportunity to respond. Compl. ¶ 51; see FED. R. CIV. P. 8(a). Relatedly, Plaintiff's claims are dismissed insofar as they are based on the actions of people not named as defendants in the Complaint, *e.g.*, Rome City Fire Chief Bremant, Oneida County District Attorney Scott McNamara, Rome Police Detective Rotolo, Rome Corporation Counsel Diane Martin Grande, Fire Inspector Kieth Gorczka, Oneida County Treasurer Anthony Carvelli, Daniel Yerden, and Rome Police Detective DelAsandro.

[24] As regards his national origin, Plaintiff states that he was born in Rome, New York. See Compl. ¶ 1.

cannot be molded by the court into constitutional violations.").

### a. Free Speech

To state a free-speech retaliation claim under § 1983, Plaintiff must prove that: "(1) he has an interest protected by the First Amendment; (2) [D]efendants' actions were motivated or substantially caused by his exercise of that right; and (3) [D]efendants' actions effectively chilled the exercise of his First Amendment right." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). The third element requires that Plaintiff's speech have been "actually chilled"; "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Id. (quoting Laird v. Tatum, 408 U.S. 1, 13-14 (1972); Davis v. Vill. Park II Realty Co., 578 F.2d 461, 464 (2d Cir. 1978) (internal quotation marks omitted)).

Although political participation is a core First Amendment concern, the Supreme Court has upheld viewpoint-neutral statutes that "prohibit the distribution or display of campaign materials near a polling place." Citizens United v. FEC, 558 U.S. 310, 422 & n.49 (2010) (Stevens, J., dissenting) (citing Burson v. Freeman, 504 U.S. 191 (1992)). New York has such a statute. See N.Y. ELEC. LAW § 8-104. Thus, although Plaintiff has alleged that Defendant Masucchi executed the administrative search warrant on election day to "pull [Plaintiff] away from the polls and block [his] right to campaign freely," Compl. ¶ 19, Plaintiff has not sufficiently alleged that he had a cognizable First Amendment right to campaign at the polls. Plaintiff also has not alleged that Defendant Masucchi's order to threaten him with arrest chilled his exercise of First Amendment rights.

Next, "[a] failure to comply with FOIL procedures does not, in and of itself, violate any rights protected by the First Amendment." Simpson v. Town of Southampton, No. 06-CV-6743,

2007 WL 1755749, at *4 (E.D.N.Y. June 15, 2007).[25] Similarly, "[a] private citizen does not have a constitutional right to initiate or to compel the initiation of criminal proceedings." Lis v. Leahy, No. CIV-90-834, 1991 WL 99060, at *1 (W.D.N.Y. June 3, 1991). Thus, Plaintiffs' allegations regarding the FOIL requests, Defendant Masucchi's failure to act on Plaintiff's complaint, and Defendants Masucchi and Fusco's failure to arrest an individual who threatened Plaintiff do not state a claim under § 1983.

Finally, "[t]he rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994). Plaintiff states that he filed Notices of Claim on January 19, 2010, and February 10, 2010, which constituted protected First Amendment activity, but alleges only that they were "ignored." Compl. ¶¶ 5, 35. While a Notice of Claim is a prerequisite in New York to filing certain suits against municipalities or their officers, agents, or employees, see N.Y. GEN. MUN. LAW § 50-e; O'Leary v. City of New York, No. 11-CV-1578, 2013 WL 1482733, at *5 (E.D.N.Y. Apr. 11, 2013), Plaintiff has not alleged any cognizable chill on his First Amendment activities resulting from Defendants' failure to respond. Accordingly, Plaintiff's free speech claim is dismissed.

---

[25] Moreover,

> Following the denial of a FOIL request, . . . an individual seeking to challenge such a denial must follow a specific "procedural path." First, Section 89(4)(a) "provides that a person denied access to requested information under [FOIL] must appeal the denial in writing to the head of the appropriate [state entity] within 30 days" of the denial. N.Y. PUB. OFF. LAW § 89(4)(a). Next, if such an appeal is unsuccessful, the individual must institute an Article 78 proceeding in New York State court *prior to* challenging the denial of a FOIL request in a judicial forum. Id. § 89(4)(b).

Simpson, 2007 WL 1755749, at *3 (citations omitted). Plaintiff has not alleged that he has complied with any of these requirements.

17

### b. Selective Prosecution

"To state a selective prosecution claim, [a] plaintiff[] must plead first that 'compared with others similarly situated, [she was] selectively treated,' and second, that 'such selective treatment was based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Bertuglia v. City of New York, 839 F. Supp. 2d 703, 726 (S.D.N.Y. 2012) (quoting Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996)). "Conclusory allegations of selective treatment may not survive a motion for dismissal." D.F. ex rel. Finkle v. Bd. of Educ., 386 F. Supp. 2d 119, 128 (E.D.N.Y. 2005) (citing Albert v. Carovano, 871 F.2d 561, 572, 573-74 (2d Cir. 1988)).

Here, Plaintiff has alleged that on November 23, 2009, he was not permitted to enter 109 Canal Street, but that Defendant Brown permitted Rofin LLC and Elagrace Caskets to enter the building and conduct business as usual. He has not alleged, however, that Defendant Brown acted to inhibit or punish his constitutional rights, or with malicious or bad faith intent to injure him. None of Plaintiff's other allegations include an instance where another person or entity was treated differently than Plaintiff under similar circumstances. See Bertuglia, 839 F. Supp 2d at 726. Plaintiff's selective prosecution claim is therefore dismissed.

## IV. STATE-LAW CLAIMS

28 U.S.C. § 1367 vests federal district courts with supplemental jurisdiction over claims forming part of the same "case or controversy" as claims in the same action over which the district courts have original jurisdiction. Subsection (c)(3) grants federal district courts discretion to decline to exercise supplemental jurisdiction if all claims arising under original jurisdiction have been dismissed. Plaintiff's § 1983 claims have all been dismissed as against the State of New York and

the Rome Defendants, and Plaintiff has alleged no other basis for the Court's original jurisdiction. The Court declines to exercise supplemental jurisdiction over Plaintiff's claims under New York law as against the State of New York and the Rome Defendants for FOIL violations, breach of contract, and violation of the speedy trial guarantee.

V.   **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the State of New York's Motion (Dkt. No. 6) to dismiss is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's § 1983 claims against the State of New York are **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Rome Defendants' Motion (Dkt. No. 23) to dismiss is **GRANTED**; and it is further

**ORDERED**, that Plaintiff's § 1983 claims against the Rome Defendants based on incidents before November 2, 2009, are **DISMISSED with prejudice**; and it is further

**ORDERED**, that Plaintiff's § 1983 claims against the Rome Defendants are otherwise **DISMISSED without prejudice**; and it is further

**ORDERED**, that Defendant Mazzaferro is **DISMISSED** from this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED.**

Dated:     September 09, 2013
           Albany, NY

Lawrence E. Kahn
U.S. District Judge